890

GUILLERMO ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., AND HEIRS OF ALFONSO ORTIZ VÁZQUEZ, Respondents; EASTERN SUGAR ASSOCIATES, Employer.

No. 407. Argued March 1, 1949.—Decided April 29, 1949.

*Angel de Jesús Matos, M. Maldonado Pacheco,* and *Aída Casañas Marengo* for petitioner. *Cruz Ortiz Stella* for respondent heirs.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In reversing the decision of the Manager of the State Insurance Fund on the ground that the workman in this case suffered an accident in the course and within the scope of

his employment and that his death was accelerated by said accident, the Industrial Commission of Puerto Rico stated in its decision:

"From the testimony of these witnesses, and taking the evidence as a whole, it appears that on the day of the occurrence, namely, July 4, 1947, the workman Alfonso Ortiz Vázquez while cutting cane, at about ten o'clock in the morning, *slipped and fell on his chest over a cane stump, but that he continued working*. The evidence likewise shows that the workman complained to his fellow workers and that while he worked, until he left at two o'clock in the afternoon, he constantly complained of a pain in the chest. At two o'clock he left for his home where his wife took care of him and he told her what had happened. The following day, as he felt the pain getting worse, he was taken to the Municipal Hospital of Humacao where he died, Dr. Rincón certifying that he died of coronary thrombosis.

"As we said in another part of this decision, as to the facts themselves the evidence is absolutely clear *that the workman suffered the alleged accident*. As may be seen, the testimony of the witnesses called by the Manager of the State Fund was very meager, this evidence being extremely weak.

"As to the medical evidence we have already said that no autopsy was performed and, according to Dr. Cordero, this was the only means of determining the relation between the alleged accident and the workman's death, which Dr. Rincón certified, by information, that it was the result of a coronary thrombosis.

"There is no question that the beneficiaries proved a *prima facie* case as to the possible relation between the death and the accident. The Manager, however, adduced no evidence of any kind to contradict their evidence as to the occurrence of the accident, which evidence, as we have already said, the Commission considers very satisfactory. If the autopsy had been performed we would undoubtedly be in a better position to decide the case, but in its absence we can not, because of that fact alone, *for which the beneficiaries are not responsible*, deny the claim in this case." (Italics ours.)

A rehearing was sought by the Manager but the Commission denied it. We issued the writ in this case at the request of the former.

After carefully considering the evidence presented at the different hearings before the Industrial Commission, we have no doubt that it proved that the workman Alfonso Ortiz Vázquez, while working as cane cutter of the Eastern Sugar Associates, on July 4, 1947, at ten o'clock in the morning, slipped in a ditch and fell forward receiving a blow on the chest with a cane stump; that the blow caused him great pain of which he complained during all the day until two o'clock in the afternoon when he quit his work and went home; that neither he nor his fellow workers, who witnessed the fall, reported the accident to the superintendent because the workman stated that he was in a poor economic situation and could not wait for the per diems to which he was entitled because they were always delayed; that the workman felt the pain in the chest during all the evening and on the following day he was taken by his wife ,in an ambulance to the Municipal Hospital of Humacao where he was confined; that Dr. Yumet examined him but found no trauma; that the workman told him of the pain but did not tell him anything about the fall; that two or three hours later the workman died and that Dr. Rincón, acting on information, as he did not see the patient alive, certified that his death was the result of a coronary thrombosis. That on the same day of the workman's death, his wife told Dr. Yumet of her husband's fall on the preceding day and the doctor told her that he was willing to make the autopsy if it were ordered; that on that same day an investigator of the State Insurance Fund investigated the facts and said that the Fund would send a doctor from San Juan to perform the autopsy but that it was never done; that even after the workman was buried one of the attorneys for the Fund tried to obtain permission from the District Attorney of Humacao as well as from the Office of the Attorney General at San Juan, for the exhumation of the corpse of the workman in order to perform the autopsy but that he never obtained it.

Dr. Yumet, who saw the workman before his death as well as Dr. J. Cordero, medical assessor of the Industrial Commission, testified that they could not determine accurately the cause of the workman's death without an autopsy.[1] However, Dr. Cordero, after having heard the evidence, and before Dr. Yumet testified, expressed himself thus:

"I believe that very little light can be shed in this case in view of the fact that we have no elements with which to work out a medical theory. We are practically in the same position as Dr. Rincón when, by information he issued a death certificate of coronary thrombosis. There is no doubt that this man could have died of coronary thrombosis as well as of internal hemorrhage, or of pericarditis with effusion, or myocarditis. *He could have died of many other things, a trauma could have been one of them, like the one alleged and many others, which, as coronary thrombosis, may be aggravated by a trauma.* We are not convinced that the man suffered an injury to the heart, nor can we categorically establish the relation without an autopsy, on a death certificate issued by information, *with the history of a possible trauma on the left precordial or pectoral region.* I do not think this is possible." (Italics ours.)

And after having heard Dr. Yumet, Dr. Cordero testified as follows:

"Mr. Commissioner, we insist that the only means of determining the cause of death and whether the alleged accident affected a previous condition of the workman, would have been an autopsy and that in its absence we have to depend on the oral evidence, independently of the doctor's testimony, because such testimony would shed absolutely no light on this case."

In view of this evidence, we have no doubt that the Industrial Commission did not err in deciding that the workman suffered an accident in the course of and within the scope of his employment. As to the fact of the fall and the

---

[1] Dr. Rincón did not testify at the hearing held before the Commission nor is there any proof to show who furnished him the information for the death certificate wherein he certifies that the workman died of coronary thrombosis.

blow received by the workman, the evidence of the beneficiaries was not contradicted in any way by the petitioner, for in our opinion the fact that the workman showed no sign of trauma on the next day when he was examined by Dr. Yumet is not sufficient to contradict the testimony of several witnesses who saw him fall and receive the blow.

The fundamental question involved in the present case is whether the fact that it was certified by a doctor, who did not see the workman at any time, and no autopsy having been performed, that he died as a result of a coronary thrombosis, is sufficient to eliminate the probable relation of cause and effect between the accident and the workman's death. Taking into consideration the testimony of Dr. Cordero, we believe that the Industrial Commission did not err either in deciding that whatever the cause of the workman's death it was accelerated by the accident which he suffered in the course and as a consequence of his work.

■ The Manager argues that since no autopsy was performed and it having been certified that the workman's death was the result of a coronary thrombosis, the accident, if any, is not compensable. We do not agree. The failure to perform the autopsy was not, according to the evidence, the fault of the beneficiaries. Furthermore, the Workmen's Compensation Act itself provides in § 5, that in case of the death of a workman under the conditions provided in the Act, the Manager may order an autopsy of the corpse to be made, if the relatives of the deceased give their consent that it be performed, but it expressly provides "that the refusal of the relatives or beneficiaries to consent to the performance of the autopsy shall in no way affect their right to claim and obtain compensation, nor shall it constitute any presumption against the rights of the claimants." (Act No. 45 of April 18, 1935.)

In the present case the beneficiaries never objected to the performance of the autopsy and the fact that the Manager did not order it in time or that subsequently he could not

obtain permission for the exhumation of the corpse to perform it, can in nowise affect the right of the former to obtain compensation nor does it constitute any presumption against said right. On the other hand, we do not attach great importance to the fact that it was certified that the death was the result of a coronary thrombosis inasmuch as the doctor who so certified did not even see the workman alive and Dr. Yumet, the only physician who did see him, denied having given said information to Dr. Rincón.

█ In view of the special attendant circumstances in the present case as to the fact that the exact cause of the workman's death was not determined by means of an autopsy, and there existing a previous specific factor, namely, the accident, the Commission in our opinion did not err in deciding that the workman's death was accelerated as a consequence of the accident which he suffered.

The decision appealed from is affirmed.